Joseph Baker, *in Equity, versus* Daniel Vining & *al.*

The purchaser of a bankrupt's right in a tract of land, if he was never a creditor of the bankrupt, nor represents any creditor, takes only the rights in law and equity, which the bankrupt had at the time of his bankruptcy.

It is a settled rule, that if one purchases an estate with his own money, and the deed be taken in the name of another, a trust results, by presumption of law, in favor of the one, who pays the money.

By force of authorities, the Court has been constrained, though reluctantly, to adopt the rule, that such payment may be proved by parol, but they will require the proof to be full, clear and convincing.

It has been said that, if the money were paid by two or more persons, and it clearly appeared how much each one paid, a trust in the estate would arise to them, respectively, *pro tanto.* But no case has been found to uphold a trust, where the proportions paid were uncertain. In such a case no trust can be established.

The presumption of a resulting trust may be rebutted by parol testimony.

The Bill charges that Jonathan Vining, in 1815, purchased fifty acres of land, and paid cash therefor; but being indebted, and with a view to keep the property from the reach of his creditors, he procured the conveyance to be made to William Bowler; that afterwards, to raise money thereon for said Jonathan Vining, and at his request, the title passed from Bowler, until, through several mesne conveyances, it came to Joshua Lord, who gave back a writing, stipulating to reconvey on the repayment of the money he had advanced; that Jonathan Vining, afterwards, of his own money, repaid said Lord, and.

procured him to make a conveyance of the land to Daniel Vining, the son of said Jonathan, for the fraudulent purpose of defeating the just creditors of said Jonathan ; that this plaintiff believes Daniel knew of his father's insolvency and intent; that said Jonathan, on his own application, made 21st February, 1843, obtained a discharge in bankruptcy, October 7, 1845 ; that J. T. McCobb was appointed assignee, and by authority from bankrupt court, on 14th December, 1846, sold at' public auction, at plaintiff's office, all said Jonathan's right, in law and equity to said land, to the plaintiff; that the deed was dated 15th, acknowledged 16th, and recorded 24th of said month ; that the defendant, Estabrooks, was present at the sale, and bid, and had a newspaper in his hand, containing notice of sale ; that on 17th December, Daniel quitclaimed to Estabrooks, his brother-in-law, said premises, for the nominal sum of $1000 he giving two notes of $500 each, on 6 and 12 months, without any mortgage or other security, for the fraudulent purpose, as plaintiff believes, of defeating his rights under the sale.

And plaintiff prays that defendants may be required to disclose fully all the facts in the case, and that the Court will decree that they convey to plaintiff their right, and for other relief.

Daniel Vining's answer : — He says he is ignorant of the circumstances connected with the premises and conveyances thereof until they passed into the hands of Lord, but has been informed that they were as stated in the bill ; that, in the fall of 1829, he went to Calais ; that after he resided there about twenty months, he was written to by his sister Clarissa, informing him of his father's extreme poverty, and that he and the family were about to be turned off the farm in controversy ; that he returned and went to said Lord to get deed of said farm, if possible ; that Jonathan was then notoriously insolvent, had taken poor debtor's oath two or three times, had quitclaimed all his right to said farm to satisfy creditors ; that in August 1831, said Daniel called on Lord, and made a contract for the purchase of said farm, (Jonathan having no inter-

est in the same,) at about $600 ; paid $100 down and took a bond for a deed, and a lease for one year, for $40 ; that in the spring of 1832 he paid $115 more, by draft on John Barnard, of Boston ; that in January, 1833, he paid $100 more and gave notes for balance ; that in the spring of 1833 he paid $100 more, and in August, 1833, paid balance and took deed ; that all said payments were his own hard earned money ; that the purchase was made in good faith and not fraudulently, as alleged by plaintiff ; that at that time Jonathan was largely in debt, and from said Daniel's earliest recollections, notoriously insolvent ; that he has permitted his father and mother ever since to live on the place ; and that his father neither directly or indirectly paid any thing to said Lord on the purchase aforesaid ; nor has he promised to make any such payment or had the ability to do so.

He believes Eastabrooks was present at the sale, does not know his motives, that nothing was done on his part singly, or in connection with said Eastabrooks, for the purpose of deceiving or defrauding Jonathan's creditors, or because he had any right in said premises. He did convey to said Eastabrooks, for good and valuable consideration, (part of which has been paid,) said premises in good faith, and not fraudulently, as plaintiff alleges.

Abstract of the answer of David N. Eastabrooks.

He says he was present at sale at plaintiff's office, made several bids, because he was friendly to Daniel, and supposing the right might sell for a trifle, and believing, from the course already taken, that an attempt might be made to disturb said Daniel in the quiet possession of his property, paid for, as he believes, with his own hard earnings, and justly and fairly purchased, he bid for same, hoping thus to save Daniel from any further trouble and expense, but disclaims any intentions of defrauding or deceiving Jonathan's creditors.

The purchase of the premises by him of Daniel, was *bona fide*, for valuable consideration, and not with design to defraud the plaintiff or Jonathan's creditors.

Much testimony was introduced by both parties.

Points of law made in argument by plaintiff's counsel : —

1. By the bankruptcy of Jonathan Vining, all his rights in law and in equity passed to the assignee. Bankrupt Law, sec. 3. But, in addition to this, the assignee is clothed, not merely with such rights, as the bankrupt himself could enforce, but with all the rights of creditors generally, in cases of fraud, and to the extent of the creditor claims. *Smith* v. *Gordon & al.*, 6 Law Reporter, 313 ; *Mitchell* v. *Winslow, Ib.* 352 ; *Martin* v. *Root & al.* 17 Mass. 222—8 ; *Gibbens* v. *Peeler*, 8 Pick. 254 ; *Holland* v. *Crafts*, 20 Pick. 321—30 ; *Sands* v. *Codwise*, 4 Johns. 536.

2. By the proceedings had, and the sale and deed from assignee to plaintiff, all the rights the assignee had, passed to the plaintiff.

3. In equity the bankrupt was the owner of the estate in dispute, and the defendants hold it in fraud of creditors, on the ground that the bankrupt's money paid for the land. If the bankrupt's money paid for the land, it is settled that equity will follow the money into the land, and make it available to creditors, or to the assignee who represents them. 2 Story's Eq. 443, (sec. 1201,) and cases cited ; *Gardiner Bank* v. *Wheaton & als.* 8 Maine, 373 ; *Legro* v. *Lord*, 10 Maine, 161 ; *Buck* v. *Pike*, 11 Maine, 9 ; *Gordon & al.* v. *Lowell & als.* 21 Maine, 251.

4th. The facts show, that the purpose of Jonathan and Daniel, in taking the deed in the name of Daniel, was fraudulent.

5th. The defendant, Estabrooks, is affected with notice, and stands in the place of Daniel, and subject to all the trusts and equities that his grantor was. 1 Story's Equity, 392, (sec. 403) ; *ibid.* 383, (sec. 395) ; *Parkhurst* v. *Alexander*, 1 Johns. Chan. 394 ; *Frost* v. *Beekman, ibid.* 288—9 ; *Johnson* v. *Strong*, 2 Johns. 510.

*Vose*, for defendants.

TENNEY, J. — The deed under which the plaintiff claims purports to convey the right, which the assignee of Jonathan Vining had in the premises ; but the notice given by the as-

signee prior to the sale was, that he should dispose of the right which the bankrupt had in the land at the time of his bankruptcy. The plaintiff seeks a decree as a purchaser of the right which Jonathan Vining had to the land in controversy in law and in equity. He does not claim as a creditor of Jonathan Vining, and does not state in his bill that he ever held that relation to him. Neither does he bring the bill as representative of any creditor or creditors of the bankrupt, by assignment or otherwise; but the foundation of his alleged right to prevail in the suit is, that by the purchase he stands in the place of the bankrupt at the time of his bankruptcy; and the claim asserted is in no respect to be regarded as superior to the right, which he represents. Whatever may have been the rights of Jonathan Vining's creditors, or the right of his assignee touching the property, as distinguished from the rights of the debtor, in a controversy with Daniel Vining or his grantee, they are not in litigation in this suit.

The conveyances to Stevens and Jewett, and to Lord, are treated by the plaintiff as *bona fide* on the part of the grantees respectively. It is not denied, that the quitclaim deed of Jonathan Vining, of his interest in the premises, to James Child and others, on the 26th of March, 1831, in consideration, that he was discharged from imprisonment on executions in favor of the grantees, was also a *bona fide* and valid transaction. After this release Jonathan Vining had no further interest in the land. The legal title was in Lord, and if Vining had any equitable interest, it passed to his creditors by that deed.

2. But it is insisted, that after the conveyance made by Lord to Daniel Vining, on August 23, 1833, Jonathan Vining had a resulting trust in the premises, by virtue of having paid to Lord the full consideration.

It is a well settled principle, if one purchases an estate with his own money, and the deed be taken in the name of another, a trust results by *presumption of law*, to the one *who pays the money.* " This is a well known and universally admitted rule in equity." *Boyd* v. *McLean*, 1 Johns. Ch. 586 ; *Buck*

v. *Pike*, 2 Fairf. 9. It is now regarded as also settled by the weight of authority, that where a trust is claimed as arising by operation of law, in consequence of the consideration having been paid by the one asserting the claim, for the conveyance made to the alleged trustee, this payment may be proved by parol ; that such evidence is admissible not only against the face of the deed, but in opposition to the answer of the supposed trustee, denying the trust. This proposition, however, has been denied, as being in violation of the statute of frauds. Roberts on Statute of Frauds, 99. But the question has been considered at rest since the time of Lord Hardwicke generally, in chancery practice, rather by the force of authority, which had long prevailed, than by any reasonable basis, on whieh the doctrine can be supported. Sir Thomas Clarke is reported to have said, in *Lane* v. *Dighton*, 1 Amb. 409, that if it was *res integra* he should have thought parol evidence ought not to be admitted, yet he conceived himself bound by the determinations of Lord Hardwicke to receive and act upon such evidence, notwithstanding such evidence is too dangerous in its consequences. The same view was taken by Sir William Grant, Master of the Rolls, in *Linch* v. *Linch*, 10 Vesey, 511, and by Chancellor Kent, in *Boyd* v. *McLean*, 1 Johns. 582, where he says, the cases uniformly show that the courts have been deeply impressed with the danger of this kind of proof as tending to perjury and the insecurity of paper title, and they have required the payment by the *cestui que trust* to be clearly proved. This court have manifested a regret that long practice had established the doctrine, and have felt the necessity of requiring full and convincing proof of payment, as the basis of a resulting trust, in favor of the one making it against the person having the legal title. *Buck* v. *Pike*, 2 Fairf. 9. And so cautious have courts been in the reception of such evidence, although the proofs have been allowed to be read ; yet if there was any secret in the cause not understood, the relief sought has been denied. *Gascoigne* v. *Theving*, 1 Verm. 366 ; *Kirk* v. *Webb*, Prec. in Ch. 84 ; *Linch* v. *Linch*, before cited.

Baker *v.* Vining.

A doubt was formerly suggested, whether a resulting trust could be sustained, when only a part of the consideration was paid by the party claiming to be the *cestui que trust.* Lord Hardwicke is represented to have said, in *Cross* v. *Norton,* 9 Mod. 233, that "the resulting trust, arose to the one who paid the *whole* consideration, but he never knew it when the consideration moved from several persons; for this would introduce all the mischiefs, which the statute of frauds was intended to prevent. Suppose several persons agree to purchase an estate in the name of one, and the purchase money appears by the deed to be paid by him only, I do not know any case, where such persons shall come into the Court and say, they paid the purchase money, but it is expected there should be a declaration of trust. But in *Wray* v. *Steele,* 2 Ves. and Beame, 389, the Vice-Chancellor says, "Lord Hardwicke could not have used the language ascribed to him. What is there applicable to an advance by a single individual, that is not equally applicable to a joint advance, under similar circumstances?" Chancellor Kent thinks the doctrine in *Cross* v. *Norton* incorrect, and says the cases recognize the trust, when the money of A formed only a part of the consideration of the land purchased in the name of B. The land in such case is to be charged *pro tanto. Botsford* v. *Burr,* 2 Johns. Chan. 405. Judge Story adopts the principle of the later cases. *Powell* v. *Mon. and Br. Man. Co.* 3 Mason, 347.

But these cases all show manifestly, a determination in Courts, not to enlarge by construction or analogy, the doctrine, in allowing the introduction of parol evidence, to contradict the language of the deed, and the answer of the alleged trustee, in order to raise a resulting trust; but to confine the party presenting such a claim rigidly within the limits which practice has established. And no case has been found where a resulting trust has been held to arise upon payments made in common, by the one asserting his claim and the grantee in the deed, wherein the grantor acknowledges the receipt of the consideration from him alone, when the amount belonging to one and the other is uncertain, and unknown even to those

who make the payments; and no satisfactory evidence is offered exhibiting the portion, which was really the property of each. The trust springs from a presumption of law, because the alleged *cestui que trust has paid the money*. Such presumption must be attended with no uncertainty. The whole foundation is the payment, and this must be clearly established. The principle has its origin in the natural presumption, in the absence of all rebutting circumstances, that he who supplies the money means the purchase to be for his own benefit, rather than that of another; and that the conveyance in the name of the latter is a matter of convenience and arrangement between the parties for other collateral purposes. 2 Story's Eq. sect. 1201.

The presumption of a resulting trust may be rebutted by parol evidence. If the plaintiff sets up an equity founded on parol proof, it may be rebutted, put down, or discharged by parol proof. There may be parol waiver of even a written contract. 2 Story's Eq. § 770, a; *Paine* v. *Dyer*, 17 Vesey, 356; *Botsford* v. *Burr*, before cited. Facts and circumstances which satisfactorily contradict the presumption, are received as effectual. 2 Story's Eq. 1202. And the common case of rebutting the presumption of a trust is, when the purchase may be fairly deemed to be made for another, from motives of love and natural affection. The purchase by a parent in the name of the son, would ordinarily be considered as intended for the benefit of the latter, so as to rebut the presumption of a resulting trust for the parent. But this last presumption may be rebutted by evidence, manifesting a clear intention that the son shall take as a trustee. *Ibid.* Where money is advanced as a loan to the party taking the deed, upon the credit of the borrower alone, it cannot be pretended that any presumption of a rebutting trust would arise. *Boyd* v. *McLean*, before referred to.

The answer of the defendant, Daniel Vining, is full, that in August, 1831, he made a contract with Lord, for the purchase of the land, made a payment, took a bond for a deed, and made other payments from time to time, with his own means,

till the whole consideration was paid, and the conveyance was made to him. This is responsive to the bill. But the answer is attempted to be overcome by the evidence introduced by the plaintiff. When the answer and all the evidence are considered, there is much uncertainty in relation to the particulars of the transaction, which took place between the father and the son. It is proved that Daniel Vining was twenty-one years of age in April, 1831; that as early as the fall of 1829, he went to Calais, and labored there from time to time till he paid the sum due to Lord, from his own means or those of his father, or both, and received a conveyance; that in the summer of 1831, Lord having advertised the land for sale, and the father having made no payment to him and being insolvent, the latter caused the son to be informed of the condition of the land and the family; had endeavored to obtain the money for Lord, but could not; every effort had failed, and that there was an opportunity for the son to make a bargain; that it was a time of distress with him, and the family were exposed to be turned out of doors. In pursuance of this request, the son came with a sum of money which was paid towards the farm, and in the course of a few months after, another sum of more than one hundred dollars, was obtained by the son at Calais, by way of a draft on Mr. Barnard, and was received by Lord. The father and the son worked much at Calais between the time the first payment was made to Lord and the time, when the conveyance was made to the son, in making shingles. The business was carried on by the aid of their own and the labor of others, who were employed by them, and was apparently profitable. They were both active and industrious men. The father had a family dependent upon him for support; and such had been this burden, that he had never been able to rescue himself from insolvency. The son was unmarried and was legally bound to afford support to no one, but his parents. Both worked upon the farm, when not at Calais for the purpose of raising money. It appears, that the son was willing to make common cause with his father in supporting the family, and freeing the farm from the debt that lay upon it. The en-

tire money received by Lord was the avails of their eastern
labor, unless there might have been a small sum furnished by
the wife of the father, which according to the same testimony,
was more than supplied, after the payments were made, from a
surplus remaining.  The money received when they were both
at Calais was in a common fund, and when needed, taken from
the common depository, to which both had access at pleasure.
The son was manifestly willing to expend the whole avails of
his labor, under the probable hope that he should eventually
secure the farm to himself; the father reposed confidence in
him, that he would continue as he had done, to afford him and
his family the assistance, which he had before manifested no
reluctance to do, when he was obliged in his distress to call
upon him.  There is no evidence in the case, tending in the
least to show, that any accounts were kept between the father
and the son, whereby either could ascertain otherwise than by
wild conjecture, what sum had been acquired by one or the
other as the net earnings, after deducting their expenditures
respectively.  It would not be strange, that the father should
suppose long after the necessary fund was obtained and ex-
pended for the desired purpose, that much was the avails of
his own labor and enterprise.  The son, on the other hand,
knowing that he had labored hard, saw the family made com-
fortable, when they had before been threatened with expulsion
from their residence, the farm freed from incumbrance, when
for years previous, the father had not been able to stop even
the accumulation of interest to its whole extent upon the
principal, might well suppose that the debt had been all paid,
" with his own hard earnings."  Both might be correct in some
measure, but both might also, be partially in error.  However
this may be, when the relation existing between them, and all
the facts and circumstances disclosed in the case are examined,
it cannot be considered, that there can be the legal presump-
tion, that here was a trust resulting to the father.  There is
nothing which can satisfy the mind, that what was done by
the two, was intended for the exclusive benefit of the father,
or that the son was to hold the relation of trustee to him for

Baker *v.* Vining.

any part of the land. If the father really believed at the time he was expending his labor in order to raise the means of payment, for the land, it is rather to be regarded as a loan to the son, to be returned in the gratuitous kind offices, which his advancing age might make necessary, and which he did not appear to doubt, would be cheerfully rendered.

All legal presumption, that it was the expectation of Jonathan Vining, that he had a trust interest in the farm, is effectually repelled by the uniform declarations made by him in the most solemn manner, that he had no interest therein. His acts in negotiating a loan to be secured by a mortgage upon the land, as the agent of Daniel, speak emphatically the same language. It was not until a difficulty arose in the family which had not been anticipated, that his views were changed, and he sought to accomplish a purpose, which could not be done, without his stamping his former declarations with the character of perjury. The most charitable construction, which can be put upon his conduct in reference to the land is, that he did not suppose he had any equitable interest in it, at the time of the conveyance to his son, and notwithstanding some of the avails of his labor contributed with the earnings of the son to accomplish the purchase from Lord, still it was done under such circumstances, that the presumption, by operation of law, if any could be regarded as having arisen, is effectually rebutted.  *Bill dismissed with costs.*

NOTE.— WELLS, J. was not present at the argument, and took no part in the decision.