THOMAS H. B. PIERCE *vs.* ALVIN RODLIFF.

Penobscot.     Opinion July 18, 1901.

*Libel. Exceptions. Practice. Judgment. Evidence. R. S., c. 82, § 29.*

It is provided by statute in this State, R. S., c. 82, § 29, that "in a suit for writing and publishing a libel, evidence shall be received to establish the truth of the matter charged as libellous. If its truth is established, it is a justification, unless the publication is found to have originated in corrupt or malicious motives." *Held;* that instructions to the jury that the truth of the publication of a libel is now a defense accompanied with other instructions, by which the plaintiff may be denied the right to have the jury pass upon the the question whether the libel originated from corrupt or malicious motives, would be erroneous, even although nominal damages only are recoverable.

Instructions to the jury claimed to be erroneous should be brought to the law court for examination by bill of exceptions, rather than by motion for a new trial.

While the practice of raising questions of law upon a motion is not to be encouraged, yet in cases where manifest error in law has occurred and injustice would otherwise inevitably result, the law of the case may be examined upon a motion; and, if required, the verdict will be set aside as against law.

In an action of money had and received that had been "defaulted by consent, damages to be heard by the court," the case after hearing on damages went

to judgment, and the plaintiff recovered the sum of twenty-five dollars out of his ad damnum of one hundred dollars. *Held;* that the defendant may afterwards show the facts and circumstances of the judgment, and that the sum sued for was paid and received by him with the understanding that it was for his services and costs in a prior case conducted by him as counsel and attorney for his client in such case. .

On motion and exceptions by plaintiff.    Sustained.

Action for libel, in which the jury gave a verdict for the defendant.    The case appears in the opinion.

*T. H. B. Pierce and H. Hudson,* for plaintiff.

*L. B. Waldron and L. C. Stearns,* for defendant.

SITTING:  WISWELL, C. J., EMERY, WHITEHOUSE, SAVAGE, FOGLER, POWERS, JJ.

WHITEHOUSE, J.   This was a suit for publishing in the Eastern Gazette, at Dexter, August 24, 1899, and twice in September, 1899, the following advertisement alleged to be a libel upon the plaintiff, viz:

"Wanted.

All persons that have put bills for collection in hands of Thos. H. B. Pierce of Dexter from the year 1885 to August 1899, and received unsatisfactory returns are requested to communicate with X. Y. Z. Post-Office, Dexter, Me.," meaning, according to the innuendo in the declaration, that "the plaintiff had since 1885 been conducting his business as an attorney dishonestly and unsatisfactorily to his clients, and had not paid over moneys collected as his duty required". The defendant contended in justification that the language of the advertisement was true.

Upon this branch of the case the presiding judge instructed the jury as follows:

"I instruct you, as a matter of law, that the advertisement is susceptible of the meaning that is put upon it by the plaintiff in his writ.   It is susceptible of that meaning, but you will determine whether or not it is so understood, whether or not that is the real meaning to be put to it, and if you find that it is, then, gentlemen, it is libellous, and the law imputes some damage that the plaintiff

has received from the publication of that article, unless the defendant on his part shows to the jury some legal excuse or justification. . . . . So, gentlemen, the burden falls upon him to satisfy the jury, if he will defend against the libel, or against this publication, that it is true. So, gentlemen, although you may think that a publication of this sort, even if true, maliciously done would be unjustifiable, be the subject of a cause of action upon which damages might be recovered, yet the law is otherwise. . . . . The law in its growth, has found it expedient to declare that although a publication may seem to be vexatious and unjustifiable, yet if the publication be true, the person libelled shall recover no damages. That is, the truth of the publication of a libel is now a defense."

But, section 29 of chapter 82 R. S., declares that "in a suit for writing and publishing a libel, evidence shall be received to establish the truth of the matter charged as libellous. If its truth is established, it is a justification, unless the publication is found to have originated in corrupt or malicious motives." It is evident that this provision of our statute was inadvertently overlooked by the presiding justice. It is evident that it was also overlooked by the plaintiff at the trial term, for after a verdict against him, he filed a motion to have the verdict set aside as against law and evidence, and also took exceptions to certain rulings and instructions of the presiding judge, but took no exceptions to the instruction above quoted.

In argument, however, the plaintiff contends that upon the uncontroverted testimony the publication unquestionably appears to have " originated from corrupt and malicious motives," and insists that upon the motion the verdict should be set aside as against law. This question would have been more appropriately presented in the plaintiff's bill of exceptions; but while the practice of raising questions of law upon a motion is not to be encouraged, in cases where manifest error in law has occurred, and injustice would otherwise inevitably result, the law of the case may be examined upon a motion, and if required, the verdict be set aside as against law. *Berry* v. *Pullen,* 69 Maine, 101, is a case exactly in point. At the

trial the presiding judge instructed the jury that an oral agreement between the payee and principal maker of a promissory note to extend the time of payment, as long as the latter would pay eight per cent interest, would be a valid agreement and discharge the surety. No exceptions were taken, but on the motion for a new trial the court corrected the error and set aside the verdict as against law. The same course was pursued in *Bigelow* v. *Bigelow*, 93 Maine, 439, the court observing that the questions might have been more concisely raised upon exceptions, but as the verdict was not warranted by the facts, the questions of law were still open to them on motion.

In the case at bar the defendant claims that in publishing this advertisement and in all that he did in the premises, he was acting in behalf of his father-in-law, S. M. Ingalls, who claimed to have acquired title, by a parol assignment, to a certain due-bill for $725, against Orrin Fitzgerald, Jr., dated at Boston Oct. 5, 1876, upon which a partial payment of $25 was made June 17, 1879. After the death of Fitzgerald, to wit, May 25, 1898, Ingalls intrusted this due-bill to the plaintiff "for collection at the discretion of said Pierce," and "if collected said Ingalls is to have $300 out of same."

Unable to realize anything from the estate of Fitzgerald, Jr., the plaintiff brought "suit in favor of Ingalls and another in favor of one Crockett against Orrin Fitzgerald, senior, the debtor's father, based upon the statute, for aiding his son to make a fraudulent transfer of certain property to him. It appears, however, that June 8, 1897, the real estate of Fitzgerald, senior, had been sold on execution in favor of a third party, to one Small, that Small conveyed the property to Tilson, and Tilson conveyed to the plaintiff's wife after Fitzgerald's right to redeem had expired. It appears, however, that no advantage was taken by the plaintiff of this forfeiture; for the attorney for Fitzgerald, senior, testifies that while he denied the validity of the Ingalls' claim on the Caffrey due-bill, as well as the liability of Fitzgerald, senior, he was anxious to relieve the property from attachments in order to make a conveyance of it, and accordingly paid $209 in settlement of the Crockett suit, and paid to the plaintiff $100 for his "trouble and

costs" in the Ingalls suit, in consideration that the suit should be entered "neither party." In answer to a letter from Mr. Ingalls, under date of September 8, 1899, demanding that the plaintiff "settle for the $100 collected on the Caffrey note," and $50 more for his expenses, the plaintiff replied that he had collected nothing for him and did not owe him anything. January 21, 1899, the plaintiff returned the due-bill to Mr. Ingalls. The plaintiff claimed that he was obliged to make extensive research, in both law and fact, in regard to the validity of the plaintiff's title and the statute of limitations, as well as respecting the liability of the defendant Fitzgerald, senior. He earnestly contends that the $100 received did not amount to reasonable compensation for his services and expenses, and denies that there was any bad faith whatever on his part in accepting this sum of $100.

But September 11, 1899, Ingalls brought suit against the plaintiff to recover the $100 so received by him and by arrangement, it was "defaulted, damages to be assessed by the court," at October term, 1899. After a full hearing the court awarded Ingalls the sum of $25, which was subsequently paid by this plaintiff.

It is not contended, by the defendant here, that the plaintiff acted in bad faith in consenting to abandon the suit against Fitzgerald, but in claiming to hold the whole amount received for his compensation; and it is evident from the judgment of the court in awarding Ingalls $25, that the plaintiff's services were not adjudged to be tainted with bad faith, for, if it had been, the award must have been for the entire $100. The court simply decided the dispute between the parties as to a just compensation for the plaintiff's services.

Thus, although this civil action was amply sufficient to settle the rights of the parties, Ingalls and the defendant appear to have been unwilling to rely upon it. In August preceding, with the aid of another attorney, they made two or three applications to the judge of the municipal court at Dexter, and one to the municipal judge at Newport to obtain a warrant against the plaintiff for "embezzlement or champerty". Failing in this, the defendant began the publication of the advertisement in question concerning

the plaintiff, calculated "to deprive him of the benefit of public confidence," and about the time of the third publication wrote the letter of September 8, signed by Ingalls, demanding the $100 and $50 additional for expenses claimed to have been incurred, although there is no evidence of expense other than that of publishing the libel. In ordering that published, the defendant stipulated that it should occupy from two and a third to three inches of space.

The plaintiff insists that this extraordinary conduct of the defendant affords abundant evidence that he and his father-in-law were actuated by strong feelings of resentment and a purpose to obtain money to which Ingalls was not entitled, by means of libel and intimidation, and that the jury would unquestionably have found that the libel originated in unworthy and malicious motives, if they had been permitted by the instructions to pass upon that question. It was undoubtedly an error of judgment and a failure of duty, on the part of the plaintiff, not to make a prompt report to Ingalls of the result of the suit against Fitzgerald with a statement of his account; and this fact together with his statement to his client that he had not collected anything for him, and his failure to make a full report to Crockett respecting the amount received on account of his claim, was doubtless calculated to give the jury an unfavorable impression of his methods. But there is a long stride between a generous estimate of the value of his services and positive dishonesty and bad faith towards his client. If the plaintiff had not recovered payment for his services in the manner he did, there was no source from which he could recover any compensation at all. Ingalls was under no obligation to pay him.

But, assuming that the verdict of the jury might not be disturbed upon the question of the plaintiff's good faith to his clients, he was still entitled to have the question whether the libel originated from corrupt or malicious motives determined upon correct rules of law, although only nominal damages were recoverable.

It is the opinion of the court that the plaintiff's contention upon this point is well taken, and that the verdict should be set aside on the motion as against law.

But there is another error in the instructions to the jury to which exceptions were duly taken and allowed.

It has been seen that the action *Ingalls* v. *Pierce*, brought to recover the $100 collected, was "defaulted, damages to be heard by the court."

In relation to the judgment in that case the instruction was as follows: "Now, gentlemen, there is some evidence which is conclusive upon the plaintiff here.' . . . . The record of that judgment is conclusive upon the plaintiff, and it cannot be argued or contended here that he did not receive that note as an attorney, that he did not collect it, and that the one hundred dollars was not received in payment of the claim." But, as bearing upon the plaintiff's good faith in abandoning the suit for $100, the jury should have been allowed to consider all of the evidence tending to support the plaintiff's contention that the money was paid and received with the distinct understanding that it was for the plaintiff's services and costs, and all the circumstances under which the settlement was made. This principle was clearly explained in *Parks* v. *Mosher*, 71 Maine, 304.

The instructions given, considered in connection with the rulings upon the evidence, were designed to give the jury the impression that they were not permitted to consider anything on this point outside of the record of the judgment.

*Motion and exceptions sustained.*