Philbrook, J.
On the twenty-ninth day of December, A. D. 1920, the parties to this action entered into an agreement which was evidenced by a written instrument, under seal, of the following tenor, to wit:
“This memorandum of agreement, made and entered into by and between Edward T. Dalton, Agt., of Portland, Maine, hereinafter called’the party of the first part, and Michael J. Callahan also of Portland, Maine, hereinafter called the party of the second part, witnesseth as follows: that the party of the first part agrees to sell and convey unto the party of the second part, with a clear and perfect title thereto, by a good and sufficient deed of warranty with usual covenants therein and title by descent properly released, the real estate situated at. 322. Spring Street, known as the Lunt house, consisting of a hah brick house, for the sum of eleven thousand ($11,000.00) dollars, to be paid as follows, cash on delivery of deed, subject to the following provisions; and the party of the second part hereby agrees to purchase of the party of the first part the said real estate, on the terms and conditions mentioned above, within 30 days from this date, and in consideration thereof the party of the second part has paid unto the party of the first part the sum of one hundred ($100) dollars on account of the purchase price, the receipt of which is hereby acknowledged.” The defendant signed the instrument by his appropriate name, but the plaintiff signed “Edward T. Dalton, Agt.”
On the twenty-ninth day of January, 1921, the plaintiff tendered to the defendant a deed of the property, executed by Alice Storer Lunt, running to the defendant, and “demanded that he accept it and make payment,” as the record discloses. The defendant did not accept the deed and said “that he wouldn’t have anything to do about it, he wouldn’t pay for it. I could demand and that is all the good it would do, or words to that effect.”
The defendant, at the time of the tender, made no objection to the form of the deed and gave no reason for not accepting it. The deed *181 was then returned by Dalton to Mr. Sanderson, who drew the instrument for Mrs. Lunt. It is not claimed that Dalton ever tendered his own deed to Callahan.
A very few days later the defendant purchased the property directly from Mrs. Lunt, taking' from her the same deed which Dalton tendered, paying her as purchase price the sum of ten thousand dollars, and also giving her a guaranty against any claims which Mr. Dalton might make against her. Mr. Sanderson, attorney for Mrs. Lunt, a witness called by the defendant, on cross-examination testified:
“Q. Isn’t it a fact that when Mr. Callahan and myself (meaning Mr. Rosen, attorney for Mr. Callahan) came to your office, you were offered ten thousand dollars and guarantee against any claims of Mr. Dalton? A. Yes.
“Q. And you received that? A. Yes.
£<Q. All you were interested in was to get the ten thousand dollars and protect your client against any claims of Dalton’s for brokerage?
“A. I supposed that was what we were all interested in.
“Q. And you got that? A. Yes.”
Dalton held an option to purchase the property from Mrs. Lunt for the sum of ten thousand five hundred dollars, which option was later modified so that he could purchase it for ten thousand dollars. Whether Mrs. Lunt was to be protected from brokerage claims or from option claims is not clear, as the guaranty does not appear in the record. The exact terms of that guaranty might throw some light upon the knowledge and understanding by all parties in interest as to certain aspects of the case.
At all events the difference between the option price of ten thousand dollars and the selling price to Callahan of eleven thousand, less one hundred dollars already paid, or nine hundred dollars, is what the plaintiff sues for in this action. The defendant offered no testimony but, at the close of the plaintiff’s testimony, moved for a directed verdict in his favor. The jury found for the plaintiff and assessed damages in the sum of nine hundred sixty-two dollars and fifty-five cents.
*182 The case is brought to us upon defendant’s exceptions and motion for new trial. Before discussing either it is proper to say that the testimony of the plaintiff, emphatic and uncontradicted, is to the effect that he was not acting as agent for anybody, but was acting for himself when he signed the agreement with the defendant. We must therefore regard the term “Agt.” which followed Dalton’s signature to the agreement as mere surplusage.
The law must be considered as fairly well settled that where nothing to the contrary appears from the contract, the good title to which the purchaser is entitled must generally be made out by the vendor himself or by his legal representatives. As a rule the purchaser is not bound to accept a good title from a third person. Hussey v. Roquemore, 27 Ala., 281. When the purchaser contracts for a conveyance from the vendor he is entitled to insist upon a perfect title or record in the vendor at the time of the delivery of the deed to him. George v. Conhaim, 38 Minn., 338; 37 N. W., 791. Under the contract the purchaser is entitled to a deed containing the personal covenants of his vendor, and with a perfect title of record in him at the time of delivery. He can refuse to accept the warranty of a third party, for the value of the covenants may depend upon the responsibility of the covenantor. Steiner v. Zwickey, 41 Minn., 448; 43 N. W., 376. Buswell v. O. W. Kerr Co., 112 Minn., 388; 128 N. W., 459. One to whom a person has agreed to convey land is entitled to a deed from such person, and need not accept a deed from a stranger to the contract. Royal v. Dennison, (Cal.), 38 Pac., 39. See also, Gaar v. Lockridge, 9 Ind., 92; Smith v. Addleman, 7 Blackford, (Indiana), 119; In re Bryant, 44 Ch. D., 218. “A party has a right to select and determine with whom he will contract, and cannot have another person thrust upon him without his consent. It may be of importance to him who performs the contract. He may contract with whom he pleases and the sufficiency of his reasons for so doing cannot be inquired into. And were such reasons open to inquiry it is easy to see that one might be willing to take the warranties of one person in a deed when he would not take those of another. At any rate he is only obliged to take the deed which he contracted to take.” Pancoast v. Dinsmore, 105 Maine, 471.
We have not overlooked Kimball v. Goodburn, 32 Mich., 10, where it was held that the tender of a title which satisfied the requirements of the contract in other respects would not be objectionable because *183 it comes not directly from the party to the contract but from a third person. That ruling is supported neither by logic nor citation of decided cases and is, we think, clearly overborne by the great weight of authority. Nor have we overlooked Greffet v. Williams, 114 Mo., 106; 21 S. W., 459; a bill to enforce specific performance of a contract, and to compel the vendee to accept a deed of the premises, wherein the court said, “If the defendant receives a good title to the land, it can make no difference to him whether the grantor in the deed which invests him with such title is the plaintiff or his wife.” Here again the court gave no reasoning in support of its rule, nor citation in support thereof from any other jurisdiction. Toward that decision also we entertain the same view that we do in Kimball v. Goodburn, supra. In Bigler v. Morgan, 77 N. Y., 312, it was held that “the deed of a third party conveying the title would be a substantial performance of the covenant to convey; but the covenants, whose value depended upon the responsibility of the covenantor, the defendant was entitled to require from his; vendor.” To our minds this statement is not in conflict with the principle above stated, viz, that the good title to which the purchaser is entitled must generally be made out by the vendor himself or by his legal representatives, but on the other hand is entirely in harmony with it.
We must hold that the tender of the Lunt deed by Dalton was not a fulfillment of his contract with Callahan.
But the plaintiff strongly urges that by word and act the defendant waived the strict performance which required a tender of plaintiff’s personal deed and is now estopped from setting up that defense. We think there is much merit in this claim. The delay of the defendant to tender his money and demand a deed, the nature of the excuses offered for that delay, and other significant indicia, quite clearly show that he would welcome release from his bargain. This was consummated by his flat refusal, when the Lunt deed was tendered, to “have anything to do about it” .... that he “wouldn’t pay for it.” The absence of any objection to the form of the deed, no reason given for not accepting it, his speedy acceptance of the same deed when it could be obtained for one thousand dollars less than the amount which he was to pay Dalton, all indicate a purpose, more or less thinly veiled, to avail himself of any method, however unpraiseworthy, to avoid the contract. So far did he carry this purpose into effect that he overstepped his own interests, and by so *184 doing committed such a breach of the contract as to release Dalton from its binding demand of a literal compliance and authorized the institution of this suit'. The verdict, upon issues of fact, is right and the motion for a new trial upon such issues must be overruled.
Consideration of the exceptions alone remain. These we will consider in the order in which they appear in the bill of exceptions.
Exception 1.
Refusal to direct a verdict in favor of the defendant. We have already discussed this motion so far as the issues of fact are concerned, but the defendant claims that his motion should have been granted upon legal grounds because the plaintiff’s declaration, consisting of five counts, begins with a count of plea in debt, “according to.the account annexed,” which account reads thus: “1920, Eeby. 4. To balance due on purchase price of real estate situated at No. 322 Spring Street, in said Portland according to contract, sealed with the seal of Michael J. Callahan, $900.00.” This count concludes that the defendant “in consideration thereof then and there promised the plaintiff to pay him said sum on demand.” The defendant relies upon Mitchell v. McNabb, 58 Maine, 506. But that case is by no méans decisive of the case at bar. In that case there was a sealed instrument whereby the defendant, who had sold a boot and shoe business in Portland to the plaintiff, agreed that he would not engage in the same business in Portland for a period of one- year. The plaintiff alleged that the defendant committed a breach of the agreement by engaging in said business in Portland within one year and brought an action of debt, alleging, “that the said defendant, by not keeping his said agreement, has damaged him in his business the sum of two hundred dollar^.” To this declaration the defendant filed a general demurrer, which the plaintiff joined. The presiding Justice sustained the demurrer, and adjudged the declaration bad. Plaintiff’s exceptions to this ruling were overruled. In overruling the exceptions the court, among other things, said: “The declaration sets forth no promise to pay any money under any terms, or conditions, but simply an agreement to abstain from selling boots and shoes at a particular place and for a stipulated time, and a violation of such agreement. The damages in such case must obviously be uncertain and unliquidated. Debt lies when one is entitled to *185 receive a certain and liquidated sum of money, or in case of a bond for the payment of money, or the performance of some act under a penalty, or for goods sold and delivered.” Further continuing, by citation of Lowell v. Bellows, 7 N. H., 391, the court said: “Debt is the proper action, whenever the demand is for a sum certain, or is capable of being readily reduced to a certainty; but it is not the proper remedy when the demand is rather for unliquidated damages than for money, unless the performance of the contract is secured by a penalty.” Upon the authority of Storey J. in Bullard v. Bell, 1 Mason, 543 (U. S. C. C. Rep.), our court further said: “The true test is, therefore, whether the sum to be recovered has, upon the contract itself, a legal certainty.” Continuing authorities upon this point it may be observed; the action of debt will lie for the recovery of a fixed or definite sum of money, or for a sum of money which can be ascertained from fixed data by computation, or is capable of being readily reduced to certainty; Mills v. Scott, 99 U. S., 29, Norris v. School Dist. No. 1, 12 Maine, 293; McVicker v. Beedy, 31 Maine, 314; Carroll v. Green, 92 U. S., 513. It has even been held that it is not necessary that a price should be agreed upon for an article sold and delivered before debt could be maintained, provided, from the nature of the contract, the vendor was to be compensated in money. Jenkins v. Richardson, 6 Marsh, J. J., (Ky.), 441; 22 Am. Dec. 82. Debt has been held to lie on a quantum meruit or quantum valebant. Van Deusen v. Blum, 18 Pick., 229. Debt will lie on a specialty, or on a simple contract express or implied, although after indebitatus assumpsit came into use it was rarely resorted to in cases on simple contracts; whenever indebitatus assumpsit is maintainable debt will also lie; Norris v. School District, supra. “The general rule is that debt lies whenever indebitatus assumpsit will lie.” Seretto v. Railway, 101 Maine, 140, and numerous authorities there cited. From an examination of the agreement between the parties, in the light of the decided cases to which we have referred, we are of opinion that the defendant takes nothing by his first exception.”
Exception 2.
Plaintiff’s declaration contained five counts and ,before argument to the jury the defendant moved that the plaintiff be ordered to select upon which count he wished to go to the jury, which motion *186 was denied and to this denial an exception was allowed. The defendant does not dwell upon this exception in his argument but it is proper to observe that where a declaration contains two or more counts, and each sets forth a separate and distinct cause of action, the plaintiff will not be required to elect on which count he will proceed, neither will election be enforced where, otherwise, the causes are not improperly blended. 21 R. C. L., 599 and cases there cited.-
Exception 3.
During the cross-examination of the plaintiff the following question was asked, and excluded: “Isn’t it a fact that Mrs. Lunt had first told you that she would sell the property- for $10,500 net to you?” This exception also is not argued by defendant in his brief and seems to lack merit because nothing appears in the record which makes the question pertinent or relative to the issues involved in the case.
Exception 4.
The following instruction to the jury was requested and the request denied; “The burden is on the plaintiff to prove that on or before Jan. 29th, 1921, the plaintiff tendered the performance by delivery or offer of delivery of a warranty deed of the plaintiff to the defendant.” The charge of the presiding Justice is made part of the bill of exceptions. Therein the rules governing the burden of proof were fully and clearly given, and the overwhelming weight of authority sustains the proposition that a trial court is not required to give instructions, though proper and such as the party is entitled to, in the very terms' asked for. 14 R. C. L., 804, and cases there cited.
Exceptions 5 and 6.
These exceptions relate to instructions requested and refused; (a) “The burden is on the plaintiff to show that if there was a waiver of strict performance, it was prior to Jan. 29, 1921.” (b) “The plaintiff must show that he was able to deliver his warranty deed on or before January 29, 1921.”
*187 Exception 5 is not sustainable because the waiver would be equally effective if made on the 29th of January as it would if made prior to that date. Exception 6 is not sustainable because it is not in harmony with the law. In equity time is not regarded as of the essence of a contract like the one here involved unless expressly so declared or involved in the nature of it. Hull v. Noble, 40 Maine, 459; Jones v. Robbins, 29 Maine, 351; Snowman v. Harford, 55 Maine, 197. And while, at law, time is of the essence of such contracts, Columbia Bank v. Hagner, 1 Pet., 455, Friess v. Rider, 24 N. Y., 367, yet the requested instruction omits the qualification that the plaintiff was not required to be able to deliver his warranty deed at all if the defendant had signified that he would not accept it under any circumstances. Moreover, in the absence of anything in the agreement to that effect there is no law which requires that a vendor should have a good title, free from encumbrances, at the time when the agreement is entered into, and during the time between that and the arrival of the time when the agreement is to be performed. Smith v. Greene, 197 Mass., 16.
The defendant takes nothing by any of his exceptions and the mandate must be

Motion and exceptions overruled.