BASIL C. EMERY *vs.* STANWOOD E. FISHER.

York.      Opinion January 21, 1930.

454

*Emery & Waterhouse,*
*Cecil J. Siddall,* for plaintiff.
*Locke, Perkins & Williamson,*
*Edward S. Titcomb,* for defendant.

SITTING: DEASY, C. J., STURGIS, BARNES, PATTANGALL, FARRINGTON, JJ.

PATTANGALL, J. On general motion by defendant. Action for damages resulting from alleged negligence of surgeon. The case was recently before this court on defendant's exceptions, *Emery* v. *Fisher*, 128 Me., 124. Exceptions were sustained, new trial resulted and verdict was a second time awarded to plaintiff.

The only present issue is whether or not the record contains evidence which, reasonably analyzed and interpreted, warrants the conclusion reached by the jury.

The plaintiff had been suffering from diseased tonsils which defendant was employed by plaintiff's attendant physician, Dr. Hurd, with plaintiff's consent, to remove. The operation was performed at the Webber Hospital, defendant being assisted by the hospital nurses, Dr. Hurd, Dr. Larochelle and Dr. Bolduc.

In connection with the operation, a metal mouth gag, the ends of which were covered with removable rubber tips, was used as a protection to the teeth. At some time while plaintiff was under ether, one of the rubber tips became dislodged, was drawn into the plaintiff's bronchus, and later was removed by Dr. Smythe. In connection with the removal of the rubber tip from the bronchus, plaintiff incurred substantial expense, suffered considerable inconvenience and was subjected to the mental anxiety and nervous strain which necessarily accompanied the second operation.

The issue submitted to the jury was whether the rubber tip found its resting place in plaintiff's bronchus by reason of the negligence of defendant or by an accident not attributable to lack of due care on his part.

The case shows that while ether was being administered by the attendants, defendant being in an adjoining room preparing to perform the operation, plaintiff became cyanotic and defendant, called hastily to his aid, used the mouth gag to force open plaintiff's

mouth as the first step toward enabling him to regain ability to breathe. Defendant claimed that it was while acting in this emergency that the rubber tip slipped from the end of the mouth gag and that the fact was discovered shortly after breathing was restored when a search was made for the tip. It not being found, defendant suspected that it might have slipped off or been pulled off by contact with plaintiff's teeth and have been either swallowed or, what seemed less likely, drawn into the bronchus.

Considering the situation in the light then presented and especially in view of the patient apparently not being a good subject for etherizing, defendant decided that no harm could result, in fact that good judgment and good surgical practice demanded, in spite of the loss of the rubber tip and regardless of its final place of lodgment, the completion of the operation and proceeded to remove the tonsils.

After his work in this respect had been completed, a further search was made for the tip with no positive result. Defendant then suggested to plaintiff's attendant physician that the patient's stools should be carefully examined for the next few days to determine whether or not the tip had passed into the digestive tract and also that notice be taken as to whether or not plaintiff developed a cough indicating the presence of the tip in the bronchus.

A cough did develop, an x-ray was taken, the tip was discovered and removed.

There was no real conflict of testimony. Opposing counsel, analyzing like evidence, drew opposite inferences and conclusions and counsel for defendant argued that certain positive statements of plaintiff and his witnesses were unreasonable and therefore untrue, but the record contains no directly contradictory material evidence.

"This is not a case where the evidence is contradictory, imposing upon the jury the duty of determining where the truth is as between irreconcilable testimony." *Eldridge* v. *O'Connell*, 114 Me., 459.

It is strongly urged by counsel for plaintiff that the tip did not become detached from the mouth gag during the emergency caused by the cyanotic condition of plaintiff and that such could not have been the case because of the position in which plaintiff was lying at

the time. But the evidence is plenary on that point. A fair reading of the record establishes the truth of the defendant's contention in this respect.

There is no evidence that the appliance used was unfit for use, as alleged by plaintiff. This being true and assuming further that the tip was lost during the emergency mentioned, certainly no act of negligence, either of omission or commission, on the part of defendant caused the injury of which plaintiff complains.

On the question of whether or not there was negligent diagnosis, negligent treatment or negligent lack of treatment after the tip had found its lodgment, plaintiff argues that defendant, finding the tip gone after plaintiff had resumed breathing and realizing the possibility of that having happened which later was found to have actually happened, should have immediately taken steps to locate the tip and having so located it, removed it at once, instead of proceeding with the operation.

This was a matter which was distinctly up to the judgment of the surgeon. All of the experts, including Dr. Smythe, called by plaintiff, unite in commending the course which defendant pursued and the logic of the situation bears them out.

Assuming the tip to be in the bronchus, all that was eventually done to relieve the difficulty must necessarily have been done had the tonsil operation been deferred, the only difference being that the tip would have been removed a few days earlier.

The plaintiff suffered no harm from the delay and defendant balanced against the risk (if risk there was) incident to that delay the necessity of the operation and the danger of again administering ether to a patient who had proven cyanotic. In any event plaintiff suffered no appreciable damage because of the course pursued by defendant and defendant was acting with reasonable care in pursuing it.

The verdict apparently rested on no more secure foundation than that the tip found its way into plaintiff's bronchus and that plaintiff thereby incurred considerable expense and was subjected to the annoyance of another operation.

But accidents happen. Surgeons neither warrant against them nor guarantee results. Their liability is limited within certain clearly defined lines. "It has become a familiar and well established principle of law that the physician, undertaking the care and

treatment of the patient standing in need of his services and employing him, contracts that he possesses ordinary skill, that he will use ordinary care and exercise his best judgment in the application of his skill to the case which he undertakes." *Cayford* v. *Wilbur*, 86 Me., 414; *Ramsdell* v. *Grady*, 97 Me., 320; *Coombs* v. *King*, 107 Me., 378; *Nickerson* v. *Gerrish*, 114 Me., 356.

No claim is made that defendant was not skilled in his profession. There is nothing in the evidence to warrant the assumption that he did not use ordinary care and exercise his best judgment in the application of his skill to the case. An unfortunate result, arising from an accident, excusable under the circumstances, was made the basis of a finding of negligence.

The verdict of a jury is not to be set aside if it is possible to reconcile it with any reasonable interpretation of the evidence, but a conclusion reached by triers of fact must rest upon a rational basis and be arrived at by a logical process in order to be accepted as final in a court of last resort. To hold otherwise would confer arbitrary powers upon a jury or presiding Justice to whom a cause is first presented.

While this court does not review questions of fact, when a conclusion of fact fails of support in evidence, a question of law is raised which may properly be considered. To justify this court in sustaining a verdict, "there must be substantial evidence in support of the verdict, evidence that is reasonable and coherent and so consistent with the circumstances and probabilities of the case as to raise a fair presumption that it is true." *Moulton* v. *Railway*, 99 Me., 508; *Cyr* v. *Landry*, 114 Me., 191; *Raymond* v. *Eldred*, 127 Me., 11. "A verdict of a jury on matters of fact and within even their exclusive province cannot be the basis of a judgment where there is no evidence to support it or when they have made inferences contrary to all reason and logic." *Day* v. *Railroad*, 96 Me., 216.

*Motion sustained.*