ARTHUR S. DAVIS, JR.
*vs.*
HAROLD INGERSON

Cumberland.   Opinion, November 25, 1952.

*Basil L. Latty,* attorney for plaintiff.

*Paul L. Powers,*
*Richard S. Chapman,* attorneys for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

NULTY, J.   This action comes before us on a motion for a new trial by the defendant after verdict for the plaintiff at the June 1952 Term of Cumberland County Superior Court.   The declaration contained three counts, one for abuse of process, one for malicious prosecution, and one for false arrest.   The count charging false arrest by agreement of counsel was not pressed at the time of trial in the Superior Court.

The following is a summary of the pertinent, admissible and material evidence:

On August 21, 1951, the defendant was the owner of a motor truck from which pulpwood was being unloaded by a servant of the defendant.   On the same day plaintiff came with a loaded truck of pulpwood destined to be unloaded at the same location where defendant's truck was being unloaded.   There was ample space available for unloading use of the two trucks but the plaintiff, in backing his truck to the location, collided with the defendant's truck causing certain minor damage, to wit, a broken mirror.   There is a conflict of testimony as to whether or not the plaintiff pulled forward after the damage to the plaintiff's mirror and again backed into defendant's truck causing damage to the fender.

It is in evidence that there was some conversation between the plaintiff and the defendant's servant because of the damaged mirror and that the plaintiff was willing to pay for that damage.   Somewhat later on the same day the defendant claims to have discovered that a fender was damaged by the contact of the two trucks and he testified that

there was yellow paint in a dent on his fender and that the plaintiff's truck was yellow. About a week later the defendant consulted his attorney concerning other legal matters and also sought advice with respect to the damage to his truck. At a later date the attorney wrote a letter for the defendant, making a written demand upon the plaintiff for the amount of the damage which the defendant contended had been caused to the defendant's truck by the plaintiff's truck and some time later the defendant, through his attorney, commenced an action of trespass on the case against the plaintiff and the writ used for the form of action was what is commonly known as a capias or attachment writ to be used as a capias and authorized by Chap. 107, Sec. 1, R. S., Me. 1944. The attorney for the defendant delivered the writ to be served as a capias to the deputy sheriff and within a few days the plaintiff, hearing that the deputy sheriff wanted to see him, approached said sheriff and, after a brief discussion, informed the sheriff that he, said plaintiff, would not pay the full bill, amounting to approximately fifteen or sixteen dollars, but was willing to pay for the mirror, the cost of which, according to the record, was $1.35. The deputy sheriff then suggested to the plaintiff that he had better talk with the defendant's attorney, whereupon the plaintiff, in company with the sheriff and plaintiff's brother, who had joined plaintiff, proceeded to the office of the attorney for the defendant. The plaintiff again refused to pay the amount demanded by the defendant's attorney, although he did again offer to pay for the mirror, and the attorney for the defendant suggested to the plaintiff that the plaintiff furnish a bond at the same time stating to the plaintiff that he would accept the plaintiff's parents as sureties. There was some conversation between the defendant's attorney and the plaintiff as to the procedure for procuring a bond and plaintiff was told by the attorney for the defendant that the plaintiff could have his attorney prepare it or that the defendant's attorney would prepare it

but that the charge for preparing it would be $5.00. The conversation terminated and plaintiff directed defendant's attorney to prepare the bond and after the sureties signed the plaintiff left the office of the defendant's attorney and the deputy sheriff signed the return on the capias writ setting forth that he had arrested the now plaintiff and, upon tender of a bond, released him and the bond and the writ were subsequently filed in the Superior Court for Cumberland County. At the March 1952 Term of the Superior Court the action was tried before a jury which returned a verdict in favor of the then defendant who is now the plaintiff and who subsequently brought the present action.

There was evidence in the record that the plaintiff, a short time before the recited events, had been employed by the defendant and that the plaintiff terminated his employment for the defendant and they separated on what might be called unfriendly terms.

The instant action, which appears to be based upon the alleged wrongful use of a capias or attachment writ as a capias and the plaintiff sought to prove his declaration by introducing considerable evidence that the plaintiff was possessed of property of various types and that for that reason there was property which could have been attached and that, therefore, the use of the writ as a capias was illegal. Chap. 107, Sec. 1, R. S., 1944, seems an answer to plaintiff's claim and reads as follows:

"**Sec. 1. Arrests upon mesne process. R. S., c. 124, § 1.** No person shall be arrested upon mesne process in a suit on contract, express or implied, or on a judgment on such contract, except as provided in the following section; and the writ or process shall be varied accordingly; but in all other actions, the original writ or process may run against the body of the defendant, and he may be arrested and imprisoned thereon, or give bail as provided in chapter 102."

Our court has heretofore considered the use of a capias or attachment writ and we said in *Oliver* v. *Kallock*, 133 Me. 403, 404, 178 A. 843, in speaking of the commencement of an action which was instituted by a writ of capias or attachment and which was intended to be served as a capias writ:

"Such use of the writ is optional with the plaintiff. *Commonwealth* v. *Sumner*, 5 Pick., Mass., 360. *Spaulding's Practice*, 102."

See also *Cleaves* v. *Jordan*, 34 Me. 9. The Massachusetts court, in said case of *Commonwealth* v. *Sumner, supra,* Page 366, said:

"* * * * * * * * * * there is no distinction in our statutes between a capias and writ of attachment; they are one writ with different powers, according to the will of him who uses them."

*Spaulding's Practice*, Chap. VII, Sec. 4, Page 50, in speaking of capias or capias or attachment writs, makes the following statement:

"These writs are precisely the same in form * * *. They differ only in the mode of service. * * * With the summons, the writ is an attachment; without it, a mere capias, or in other words, the precept of the writ in the form given, being in the alternative, either 'to attach the goods or estate of the defendant' or 'for want thereof to take his body,'—if the writ, with the accompanying summons, is served according to the first command—it is a writ of attachment,—if without the summons and according to the second command, it is capias."

See also *Howe's Practice*, Chap. 7, Sec. II, Page 55.

*Spaulding's Practice*, Chap. XII, Sec. 1, Page 102, in speaking of arrests in general and the service of a capias, states:

"Though the order in the writ in the form prescribed, be, to attach the goods, &c. and 'for want

thereof,' to take the body, yet the plaintiff may, if he choose, direct the body to be taken in the first instance, that is, he may, at once, use the writ as a capias. And the defendant cannot protect himself from arrest, by tendering property sufficient to secure the demand, for that would be to compel the plaintiff to use his writ, as a capias or attachment, when, in fact, he has an election to use it either as such, or as a capias. * * * *.

"But if the plaintiff wish the person of the defendant to be arrested,—that is, if he intend to use the writ as a capias, he must give such special direction, either on the writ, or verbally to the officer, for though an officer would be justified in at once serving the writ as a capias without further directions than those contained therein, he is under no obligation to do so. And, in fact, it is only by such special direction, that the plaintiff can express his election to use his writ as a capias."

In view of the statute quoted and the authorities and the decisions thereunder, we recognize the absolute right of a plaintiff or his attorney to use a writ of capias or attachment as a capias as provided by statute, but we do give our hearty approval to the admonition found in *Colby's Practice,* Page 133, which was also recognized and contained in part in the fifth edition of the *Maine Civil Officer,* Page 67, Note (o), entitled "Arrest on Civil Process" which reads as follows:

"(o) The power of arresting a person for a debt or other civil cause, based simply upon the allegations in the declaration in the writ, unaccompanied by even the oath of the party plaintiff, (except in actions of assumpsit,) and before any proof whatever is made of the justice of his claim, is one of the most remarkable anomalies in the laws of our Republic. The right of personal security is the most sacred of rights; and an arrest being a sort of personal indignity, should never be resorted to for the purpose of gratifying the vengeful feeling of any person, but only in the clearest cases of

> right; for an unnecessary arrest is morally an as-
> sault and battery. An officer when making an ar-
> rest is bound, on demand, to make known his
> authority."

The motion for a new trial sets forth, among other rea-
sons, that the verdict was against the law and against the
evidence. It is apparent that the present defendant (plain-
tiff in the former action) had an absolute right to use a
writ of capias or attachment as a capias in all actions pro-
vided by statute. This being so, it is rather difficult for us
to find in the admissible record in this case any of the essen-
tial elements of the actions known as abuse of process and
malicious prosecution. The plaintiff in the instant case
sought to show, as we have said before, that he had ample
property which could have been attached and, that being so,
the use of the writ of capias or attachment as a capias was
not warranted. We have already pointed out that this as-
sumption is not true and much evidence, therefore, admitted
in the instant action as to the property affairs of the pres-
ent plaintiff became immaterial and extraneous and not
pertinent to the issue. Likewise, the evidence on the part
of the defendant, who was plaintiff in the former action, by
which he sought to prove not only that he had made diligent
search for property of the present plaintiff but that he had
also taken the advice of his attorney after disclosing fully
all facts to him, and that the diligent search and the attor-
ney's advice were a sufficient answer to the present plain-
tiff's claims. All of that evidence was immaterial, extrane-
ous and not pertinent to the issue as well as much other
evidence introduced and sought to be rebutted with respect
to the motives of the present defendant, then plaintiff in the
former action. We said in *Adams* v. *Merrill*, 145 Me. 181,
187, 74 A. (2nd) 232, 236:

> "Jurors are human, and like all human beings are
> so influenced by extraneous, erroneous, and often
> malicious, acts or statements, that they fail to dis-

tinguish what is important, true or material. Anything that might prejudice the ordinary person will probably throw the mental viewpoint of some, if not all, the jurors out of alignment. The warnings in a judge's charge will many times fall on ears deafened by a prejudice. The estimate of the value of vital evidence depends, too often, on the manner in which it affects a juror's likes, dislikes, and emotions."

We also said in *Adams* v. *Merrill, supra,* 145 Me. 187, 188:

"Courts have always endeavored to prevent a prejudicial fact that is not relevant to 'creep' into testimony, and to correct by the charge, so far as possible, the effect when it is inadvertently or boldly brought out in evidence, and not objected to. If it is prejudicial, and if it probably affected the improper decision of the jury, a new trial may be granted on motion. * * *

"The general rule of course is, that the admission of improper evidence is not available as ground for new trial unless objection was made thereto at the time, but when improper evidence is so prejudicial that the jury verdict indicates that an unjust decision was in part due to a sympathy or a prejudice occasioned by that evidence, the verdict is clearly wrong. *Raymond* v. *Eldred,* 127 Me. 11, 17; *Ritchie* v. *Perry,* 129 Me. 440."

As we have pointed out in this opinion, the use of a writ of capias or attachment as a capias is proper and optional with any plaintiff in all cases permitted by statute and, therefore, much, if not all of the evidence relating to the property affairs of the then defendant in the former action and the diligence used by the then plaintiff in the former action became immaterial and extraneous and, perhaps, prejudicial, or, at least, such evidence could have misled the jury. That being so, we feel that the verdict, under the circumstances, was clearly wrong and that, therefore, a new trial should be granted, but if there were any doubt as to whether or not the evidence prejudiced or misled the

jury, we believe it is completely removed when the charge of the presiding justice is examined, which, in this case, is made a part of the record. Before considering portions of the language of said charge, we believe it pertinent to state that ordinarily a general motion for a new trial does not reach a defect in the charge of the presiding justice. This court has said many times that practice at variance with Rule 18 of the Rules of Court, which rule definitely states:

"Exceptions to any opinion, direction or omission of the presiding justice in his charge to the jury must be noted before the jury, or all objections thereto will be regarded as waived.",

should not be encouraged. There is, however, a rather definite exception to the application of the rule which has developed in instances where a jury has been given instructions which were plainly erroneous or which justified belief that the jurors might have been misled as to the exact issue or issues which were before them to be determined. See *Roberts, Admr.* v. *Neil,* 138 Me. 105, 107, 22 A. (2nd) 135, and *Cox* v. *Metropolitan Life Insurance Company,* 139 Me. 167, 172, 28 A. (2nd) 143, and cases cited therein. In our opinion the hereinafter quoted portions of the charge of the presiding justice come within the limits of the exception to the rule referred to in *Roberts, Admr.* v. *Neil, supra,* and *Cox* v. *Metropolitan Life Insurance Company, supra.* The presiding justice, in charging the jury in respect to the capias or attachment writ which was served as a capias, said:

"This writ, and I am now speaking of Plaintiff's Exhibit 3, the original writ, commands the officer to attach the estate of Stanwood Davis of Freeport to the value of $200, and for want thereof to take the body of the defendant. You see the writ commands the officer to attach and, for the lack of goods in the estate of the defendant in this particular case to arrest his body or to take him and detain him.

"Now what do the words 'for want thereof' mean; for want of estate to be attached? If reasonable diligence is used on the part of a plaintiff in a writ of this kind to ascertain whether or not the defendant has property that may be attached, then he should use that due diligence and not resort haphazardly to a writ of this particular kind in which the person of the defendant is restrained. So it is for you to decide from all of the facts in this case whether the plaintiff in that case, through himself or his attorney, used reasonable diligence to determine that there was not sufficient property of the defendant in that case that he could safely attach."

Again, in his charge, he said, speaking further of defendant's diligence:

"You have had the testimony of the defendant, through himself and his agent or his lawyer, as to what diligence was used in an attempt to discover whether or not this particular defendant at the time, how plaintiff, had any personal property that could be reasonably and with safety attached. You are to say whether or not investigation was made to determine whether or not any automobile was registered in the name of the then defendant. You are to say whether or not it would be the duty of a person who wished to make an attachment, if possible, of the assets of a defendant, and as to how he might ever be able to tell how much was owed by outsiders to another person."

It is our opinion that the quoted instructions were plainly erroneous and the giving of them, as well as certain other erroneous instructions which we have examined but have not quoted when considered with immaterial and extraneous evidence, constituted errors of law. Such being the case under the authority of *Springer* v. *Barnes,* 137 Me. 17, 20, 14 A. (2nd) 503, 504, where we said:

"A general motion ordinarily does not reach a defect in the judge's charge. Where, however, manifest error in law has occurred in the trial of a case

> and injustice inevitably results, the law of the case may be examined on a motion for a new trial on the ground that the verdict is against the law.",

the defendant would be entitled to a new trial on the ground that the verdict is against the law. For other cases to the same effect, see *Pierce* v. *Rodliff,* 95 Me. 346, 50 A. 32; *State* v. *Wright,* 128 Me. 404, 148 A. 141; *State* v. *Mosley,* 133 Me. 168, 175 A. 307; *Roberts, Admr.* v. *Neil, supra,* and *Cox* v. *Metropolitan Life Insurance Company, supra.*

We conclude that because of the errors of law, the defendant's rights were highly prejudiced resulting in an improper decision of the jury. This creates a manifest injustice and it is our duty to order a new trial. The mandate will be

*Motion sustained.*
*Verdict set aside.*
*New trial granted.*