ETHEL M. JOHNSON
*vs.*
WILLIS M. PARSONS, ADMR. OF ESTATE OF
MALCOLM H. PARSONS

York.   Opinion, October 10, 1957.

*Henry M. Fuller*, for plaintiff.

*Harvey & Harvey*, for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, BELIVEAU, TAPLEY, SULLIVAN, DUBORD, JJ.

DUBORD, J.   This is an action to recover for services alleged to have been performed by the plaintiff for Malcolm H. Parsons during his lifetime. Within twelve months from the date of the appointment of the administrator, the plaintiff filed an affidavit in the Probate Court setting forth a claim totaling $5,400.00. As the basis for her claim, she made three allegations, (1) that she had entered into a specific contract with the intestate whereby she would enter decedent's employment and be paid at the rate of $30.00 per week; (2) that she was entitled to recover for unpaid services on a *quantum meruit* basis; and, (3) that in consideration she should perform the services agreed upon, the intestate would devise to her the farm upon which she was employed.

In her writ there were three counts which followed in substance the claims set forth in her affidavit. The first

count alleged a specific contract of employment at the rate of $30.00 per week. In the second count she set forth a claim based on *quantum meruit*. In her third count she declared upon an oral agreement on the part of the decedent that he would devise the farm to her in payment for services rendered.

To the first count there was attached an account annexed claiming for work and labor from February 5, 1951 to July 9, 1954, the date of decedent's death, at the rate of $30.00 per week for a total of $5,400.00.

Defendant filed a motion for specifications and in compliance with this motion, the plaintiff alleged that the contract upon which the action was based was entered into on an unspecified date in January 1951. It is to be noted that the account annexed which alleged February 5, 1951 as the specific date of the employment, was not corrected in the specifications. No mention was made of the second count in the specifications filed by the plaintiff. While the third count in the writ alleged an agreement in January of 1951 to devise the farm to the plaintiff, the specifications changed this date to April 1954.

Defendant pleaded the general issue and, by brief statement, the statute of frauds was interposed, as a defense to the third count.

During the progress of the trial it was stipulated that the requirements of the statute relating to filing of the claim and to bringing of the suit had been complied with.

The presiding justice instructed the jury that the plaintiff was limited to only those items set forth in the first count in the declaration and that no consideration should be given to the second and third counts.

These instructions were correct insofar as the third count is concerned. Section 1, Art. VII, Chap. 119, R. S. 1954.

The instructions of the presiding justice in reference to the second count, however, were erroneous. To this instruction relative to the second count, the plaintiff seasonably took exceptions. The exceptions were not perfected.

The evidence disclosed that during the last few months of plaintiff's alleged employment, she was paid the sum of $130.00 by the decedent. The jury apparently gave the defendant credit for this payment of $130.00, and returned a verdict for $5,270.00. The case is now before us on defendant's motion for new trial, on the usual grounds that the verdict is against the law and the evidence.

In support of her right to recover, plaintiff introduced in substance the following evidence. A man named Lord and his wife had been employed to work on a certain farm, located in Eliot, Maine, which was then owned by a corporation known as M. H. Parsons & Sons. Title to the farm was conveyed to Malcolm H. Parsons by the corporation on December 31, 1953. An officer of the corporation testified that Malcolm H. Parsons had authority to employ persons to work on the farm even before he acquired title. Malcolm H. Parsons did not live on the farm until March of 1954. His residence was in York Village.

It appears that one Herbert F. Lord and his wife were employed on the farm in question. Lord's duties were those of the ordinary farm hand, and his wife performed the ordinary household chores as well as taking care of some cows and churning butter and doing other odd jobs about the place. For these services, the Lords were paid a total joint weekly wage of $35.00. Sometime, early in the spring of 1951, Mrs. Lord was taken ill, and it became necessary, so the plaintiff claims, to secure a replacement for her. There is evidence on the part of Lord to the effect that Mrs. Johnson came to the farm a short time before his wife was taken ill, and continued her services until the death of M. H. Parsons, on July 9, 1954. The date when Mrs. Johnson came

to the farm is left in a rather indefinite manner. Mrs. Johnson did not stay on the farm at night, but traveled to and from her home in South Berwick every day. There is nothing in the testimony of Lord to support the contract of employment upon which Mrs. Johnson relied, and upon which the verdict of the jury is based. It is rather significant to note that one of the contentions of the plaintiff was that she should be compensated at the rate of $30.00 per week for performing the same services previously performed by Mrs. Lord, and yet Mrs. Lord and her husband, who worked as a farm hand, were paid only $35.00 per week jointly.

The evidence disclosed that the wages of Mr. and Mrs. Lord were paid regularly by the corporation which owned the farm until title to the farm was conveyed to M. H. Parsons on December 31, 1953, after which date the Lords were paid by Parsons.

It is admitted by Lord that subsequent to the death of M. H. Parsons, he was discharged by the sons of Malcolm H. Parsons under a cloud of larceny and embezzlement, facts which leave his testimony subject to an inference of prejudice against the sons, whose interest in their father's estate would naturally be diminished by any amount allowed the plaintiff.

Another witness, who was employed on the farm for some part of the period of alleged employment of Mrs. Johnson, testified that Mrs. Johnson was on the farm and performed services. There was nothing in his testimony, however, to support a specific contract of employment.

Another witness testified that he had knowledge that Mrs. Johnson was working on the farm, and that the decedent told him he was indebted to Mrs. Johnson in a large amount. At one point in the testimony of this witness, he volunteered the information that he was told by M. H. Parsons, that the farm was being fixed up for Mrs. Johnson and that if

anything happened to him, she would receive the farm. There was nothing in his testimony to support a specific contract of employment.

The only witness who testified in any manner in support of a specific contract of employment was one George Boston, a brother of the plaintiff and manifestly a highly interested witness. It is not our intention to analyze in detail the testimony of this witness and point out the ambiguities and those portions of his testimony which cause us to believe that it does not rise to that degree of cogency required in cases of this type.

Subsequent to the time when title of the farm was acquired by Parsons, the plaintiff was paid the sum of $130.00 by Parsons. These payments are supported by checks introduced as exhibits. The jury apparently gave the defendant credit for these payments. The jury award is at the rate of $30.00 per week from February 5, 1951 to July 9, 1954, and this in spite of the fact that there is no definite testimony when her employment began and that while there is some testimony on the part of Lord that she came to the farm prior to March 13, 1951, his testimony is to the effect that she did not work full time; and moreover, the witness Boston testified that there was a period when his sister left the farm for a while during the period for which the jury has awarded her compensation.

A son of the decedent, and an officer of the corporation, which owned the farm in question until December 31, 1953, testified that at no time during the alleged period of employment of the plaintiff did he see her on the farm. It seems strange that she would work for more than three years without receiving compensation; and that she would do this while she found it necessary to borrow from her brother for her support and that of her children. There is also a note of suspicion and misunderstanding when the evidence disclosed that the corporation paid its employees regularly

every week. Moreover, although the plaintiff contends that she worked all of this long period without compensation, the evidence disclosed that towards the end of her employment she was in possession and ownership of an automobile.

There was a conflict of evidence. However, this does not necessarily mean that the plaintiff has sustained the burden of proof.

> "As to the second and third propositions, we are clearly convinced that the finding of the jury should be set aside. While upon these issues there is a conflict of testimony, yet, in view of the nature of the case, the fact of a conflict is not decisive. The phrase 'burden of proof,' like the phrase 'ordinary care,' is a relative term and must be considered, not only in the light of the conflict of the evidence, but also with reference to the subject matter to which the burden of proof relates. With respect to ordinary merchandise accounts and payments thereof, and of cases involving simple issues of fact, the rule is well established that where a substantial conflict of testimony appears, the court will not disturb the verdict of the jury.

> "There is another class of cases, however, in which the courts hold that the burden of proof must rise above the mere conflict of testimony and become clear, convincing and conclusive, to sustain a verdict.

> "Says Wigmore, Vol. 4, section 2498: 'But a stricter standard in some such phrase as 'clear and convincing proof; is commonly applied to measure the necessary persuasion for a charge of fraud; for the existence and contents of a lost will; for an agreement to bequeath by will; for mutual mistakes sufficient to justify reformation of an instrument; and for a few related cases.'" *Liberty* v. *Haines*, 103 Me. 182, 190; 68 A. 738.

> "Therefore in the case before us, typical of a class now becoming somewhat common, the court is of opinion that the evidence required to establish an

ante mortem contract that results in a post mortem disposition of an estate must come within the rule governing the quality of proof required to establish the reformation of an instrument, to prove the contents of a lost will, or a deed, or an agreement to bequeath by will.

"We can conceive of no class of cases in which a higher kind of proof should be demanded than that which seeks to establish oral contracts calculated to subvert the muniments of title and divert descent of intestate property from its legal channel. No class is more susceptible to the temptation of fraud and none in which it can be more easily practiced." *Liberty* v. *Haines*, 103 Me. 182, 193; 68 A. 738.

"One who withholds his demand while an alleged debtor is alive, and in after-time seeks to compel payment by the latter's estate, has no right to expect that such claim will escape close scrutiny or be enforced in the absence of evidence preponderantly amounting to clear and cogent proof." *Weed* v. *Clark*, 118 Me. 466, 469; 109 A. 8; *Colvin* v. *Barrett, Admr.*, 151 Me. 344; 118 A. 2d. 775.

While we are entirely cognizant of the rule that the judgment of this court is not to be substituted ordinarily for the finding of a jury, a verdict should be set aside when it appears that the parties have not had a fair trial. However, bearing in mind the rule relating to burden of proof in cases of this nature, we are of the opinion that the plaintiff's evidence upon the issue of a specific contract of employment is unconvincing and unsatisfactory. The verdict was not a well reasoned one, and was undoubtedly influenced to a large extent by the error of the presiding justice, when he instructed the jury that they were limited to the allegations in the first count.

It has been held many times by this court, that where there is manifest error in law in the judge's charge to the jury, and where as a result thereof, injustice results, the

situation may be examined on a motion for a new trial, as against the law, even though better practice demands that the point be raised in a bill of exceptions.

> "However, this Court has in certain cases reviewed questions of law both on a motion for a new trial and on appeal, even though exceptions were not taken. *State* v. *Wright,* 128 Me., 404, 148 A., 141; *State of Maine* v. *Mosley,* 133 Me., 168, 175 A., 307; *Trenton* v. *Brewer,* 134 Me., 295, 186 A., 612; *Springer* v. *Barnes,* 137 Me., 17, 14 A., 2d. 503; *Mcgguier* v. *DeWeaver,* 139 Me., 95, 27 A. (2d) 399; and *Cox* v. *Metropolitan Life Ins. Co.,* 139 Me., 167, 28 A. (2d), 143.

> "Such review, however, is not compatible with best practice, and although there be error in an instruction, when no exception is taken, a new trial either on appeal or motion should not be granted unless, as stated in the above cited cases, 'error in law . . . was highly prejudicial . . . and well calculated to result in injustice,' or 'injustice would otherwise inevitably result,' or 'the instruction was so plainly wrong and the point involved so vital . . . that the verdict must have been based upon a misconception of the law,' or 'When it is apparent from a review of all the record that a party has not had that impartial trial to which under the law he is entitled . . . .' We consider the foregoing applicable as well to an omission as to an erroneous instruction where no exception is taken." *State of Maine* v. *Smith,* 140 Me. 255, 285, 286; 37 A. 2d. 246.

This rule has been applied in civil as well as criminal cases. *Pierce* v. *Rodliff,* 95 Me. 346; 50 A. 32; *Emery* v. *Fisher,* 128 Me. 453; 148 A. 677; *Adams* v. *Merrill,* 145 Me. 181; 74 A. (2nd) 232; *Fotter* v. *Butler,* 145 Me. 266; 75 A. (2nd) 160; *Davis* v. *Ingerson,* 148 Me. 335; 93 A. (2nd) 129; *Thompson* v. *Franckus,* 150 Me. 196, 201; 107 A. (2nd) 485.

The instructions of the presiding justice that the case should be limited to the first count were erroneous.

> "As a general rule the plaintiff may insert in his petition, declaration, or complaint as many counts as he deems proper, or plead all the causes of action he has, as long as he does not violate the rule against vexatious pleading." 71 C. J. S. § 88, 208.

> "It is a familiar rule of pleading that when the plaintiff has two or more distinct reasons for obtaining the relief sought, or when there is more or less uncertainty as to the grounds of recovery or as to the exigencies of proof, the petition may set forth a single claim in more than one count. The pleader may state his case in as many ways as he sees fit in separate counts in order to meet any possible phase of the evidence, and he will not be required to elect on which count he will proceed. Nor do the different theories of recovery constitute admissions within the rule that a party is estopped by the admissions in his own pleading." 41 Am. Jur. § 106, 363.

> "As a general rule, a plaintiff, when uncertain as to which of two or more grounds of recovery he will be able to prove, is allowed to present his claim by separate counts so framed as to meet the exigencies of the case as it may develop at the trial, and although he has only a single cause of action arising from a single transaction, he will not be required to elect upon which count he will stand. In such a case, election is frequently impossible until the facts are developed in the trial of the case, and, in the event of possibly conflicting inferences, until the submission of the case to the jury." 41 Am. Jur. § 357, 534.

> "Where different causes of action are stated in several counts, ordinarily no election can be required unless the counts are so inconsistent that proof of one necessarily disproves the other or unless there is a misjoinder." 71 C. J. S. § 483, 998.

See also *Dalton* v. *Callahan*, 122 Me. 178; 119 A. 380.

Moreover, we regard as prejudicial to the plaintiff, the testimony of the witness who volunteered the information that the decedent was fixing up the farm for the purpose of devising it to the plaintiff. As previously pointed out, the plaintiff had filed an affidavit setting forth a contention that the farm was to be devised to her. A copy of her affidavit was introduced as an exhibit and was before the jury for consideration. Moreover, the jury also had in its possession during its deliberations the writ which contained all three counts.

The evidence in this case was undoubtedly sufficient to permit a jury to find that the plaintiff had performed services, for which she had not been paid. Had the jury been instructed that they could give consideration to the second count and award the plaintiff compensation upon an implied contract, it may well be that the verdict returned would have been substantially smaller than the one awarded the plaintiff. The jury might have well believed that the evidence to support a specific contract was inadequate. However, feeling that the plaintiff should receive some compensation, and having heard improper evidence that the farm was to be devised to her, and being limited by the instructions of the presiding justice, which eliminated the theory of an implied contract, they came to the conclusion that the only way to compensate the plaintiff was to find that a specific contract had been entered into.

> "Courts have always endeavored to prevent a prejudicial fact that is not relevant, to 'creep' into testimony, and to correct by the charge, so far as possible, the effect when it is inadvertently or boldly brought out in evidence, and not objected to. If it is prejudicial, and if it probably affected the improper decision of the jury, a new trial may be granted on motion." *Adams* v. *Merrill*, 145 Me. 181, 187; 74 A. 2d. 232.

> "A conclusion reached by triers of fact must rest upon a rational basis and be arrived at by a logical

process in order to be accepted as final in a court of last resort." *Emery* v. *Fisher*, 128 Me. 453, 457; 148 A. 677; and *Arnst* v. *Estes and Harper*, 136 Me. 272, 281; 8 A. 2d. 201.

The evidence adduced by the plaintiff was not sufficient to support the alleged specific contract upon which the verdict is based. Because of this, and because of the erroneous instructions of the presiding justice and because of the improper evidence relating to the alleged agreement to devise the farm which "crept" into the case, we feel that the defendant did not receive a fair trial and that injustice has resulted.

In arriving at our conclusion we have not overlooked the recent decisions of this court in *Colvin* v. *Barrett, Admr.*, 151 Me. 344; 118 A. (2nd) 775; *Lawson* v. *McLeod, Admr.*, 152 Me. 67; 123 A. (2nd) 199; and *Stinson* v. *Bridges, Admr.*, 152 Me. 306; 129 A. (2nd) 203; which were all cases based on implied contracts and where recovery was sought on a basis of fair value for services rendered.

It is our opinion that the verdict of the jury is an ill considered one.

*Motion sustained.*
*Verdict set aside.*
*New trial ordered.*